UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN K. KAWAMOTO, | No. 2:24-cv-00258 SCR P |
| Plaintiff, | |
| v. | ORDER |
| PATRICK COVELLO, et al., | |
| Defendants. | |

Plaintiff is incarcerated in a state prison and proceeds pro se and in forma pauperis with a civil rights action under § 1983. Before the undersigned are plaintiff's motion to amend (ECF No. 29) and third amended complaint ("TAC") for screening (ECF No. 30). Plaintiff's motion to amend is granted. See Fed. R. Civ. P. 15(a)(2). As set forth below, plaintiff's TAC states a cognizable claim under Title II of the Americans with Disabilities Act ("ADA") against defendant CDCR and defendants Covello, Bannion, John Doe #1, Mendoza, Pedersen, and Corcoran in their official capacities only, but no other cognizable claims.

**STATUTORY SCREENING**

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In performing this screening function, the court must dismiss any claim that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief

1

from a defendant who is immune from such relief." Id. § 1915A(b).  A claim is legally frivolous when it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless.  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-557 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim upon which the court can grant relief has facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 93-94 (2007), and construe the complaint in the light most favorable to the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## PLAINTIFF'S TAC

### I.      Factual Allegations

The events underlying plaintiff's TAC occurred at Mule Creek State Prison ("MCSP") and California State Prison, Los Angeles County ("CSP-LAC") across 2023.  (ECF No. 29.)  The TAC names twelve total defendants sued in their official and individual capacities: (1) Patrick Covello, MCSP Warden; (2) Correctional Officer ("C/O") Bannion; (3) C/O John Doe #1; (4) M. Mendoza, ADA Correctional Counselor I; (5) E. Pedersen, MCSP Asst. Warden for ADA; (6) California Department of Corrections and Rehabilitation ("CDCR"); (7) John Doe #2; (8) Lt. Corcoran; (9) Dr. Vang; (10) Dr. Kehinde; (11) Dr. Oh; and (12) L. Lundy, CSP-LAC Warden. (ECF No. 30 at 1-2, 4-5).  As a result of the injuries alleged below, plaintiff seeks $250,000 in compensatory damages and $5,000 in punitive damages.

### A. Access to Administrative Segregation Unit Exercise Yard

Plaintiff alleges he was denied equal and safe access to the administrative segregation unit ("ASU") exercise yard from March 24, 2023, to May 5, 2023. (ECF No. 30 at 8, ¶ 1.) During that time, there was a hole in the pathway leading to and from the yard about 5' across and 3' deep. (Id.) Months prior, a maintenance crew dug the hole to fix a broken pipe. (Id., ¶ 2.) The hole prevented a safe path for mobility impaired inmates. (Id.) Plaintiff had to traverse through the "A" section shower and step over and down 3 barriers. (Id., ¶ 3.) Plaintiff is a certified disabled inmate who at the time used a cane and needed "level terrain" to traverse. (Id., ¶ 4.)

On or about March 28, 2023, plaintiff submitted a G-22 request for interview to defendant Corcoran to complain about the danger and request a work order to fix the hole. (ECF No. 30 at 9, ¶ 5.) Defendant Corcoran never responded. On April 29, 2023, plaintiff saw defendant Corcoran in the ASU and asked, "When will maintenance cover the hole? I'm ADA I need level terrain." (Id., ¶ 6.) Defendant Corcoran responded with a bit of sarcasm, "Whenever they get to it!" (Id.)

Plaintiff used the ASU yard for exercise, socializing, sun and fresh air, and hygiene and grooming. To do all these things, he was forced to traverse the "A" section shower. (ECF No. 30 at 9, ¶ 7.) On April 29, 2023, while stepping over the shower's second or third barrier, plaintiff's foot caught the edge and he flipped over, scraping the left side of his face, scraping and banging his left knee, and slamming down on his right hip. (Id. at 9-10, ¶ 8.) His hip was severely damaged, causing extreme pain and further aggravating his degenerative bone disease. (Id. at 10, ¶ 8.) That same day, plaintiff filed a 602 grievance and a health care grievance for his injuries. (Id., ¶¶ 9-11.)

On or about May 1, 2023, defendant Mendoza came to plaintiff's cell in the ASU. Plaintiff told her that he voiced his ADA concerns to defendant Corcoran to fix the hole. (ECF No. 30 at 10, ¶ 12.) Defendant Mendoza stated that it was justified to deny ADA inmates equal access because the pathway was under maintenance. (Id. at 10-11, ¶ 12.) Plaintiff contends defendants did not complete the maintenance in a timely manner and were put on notice by plaintiff a month before his fall. (Id. at 11, ¶ 13.) Less than two weeks after plaintiff was injured

and filed grievances, maintenance filled in the hole and repaved the walkway. (Id., ¶ 14.) When plaintiff previously asked defendant C/O Bannion to complete the maintenance, he replied that it was above his paygrade. After plaintiff fell, Bannion said "sue em." (Id. at 12, ¶ 16.)

### B. Medical Care for Injuries from Fall

Plaintiff's fall further aggravated his degenerative hip disease. Plaintiff used a cane at the time of his fall on April 29, 2023, and was able to walk the track for 45 minutes. (ECF No. 30 at 17.) But by June 16, 2023, he had to use a walker. By August 18, 2023, plaintiff was in so much pain that his disability code went to DPO, "permanent wheelchair dependent." (Id.) The injury affects plaintiff's daily activities, including making it painful to sit down and get up from the toilet. (Id. at 18.)

Plaintiff made sick calls for extreme pain on August 18, 2023, September 1, 2023, and September 28, 2023. (ECF No. 30 at 21.) Defendant Dr. Vang at first refused to address plaintiff's pain and plaintiff had no choice but to self-medicate. (Id.) Dr. Vang told plaintiff to be careful because there's a lot of fentanyl on the yard. Plaintiff was careful but still blacked out twice. (Id.) Around August 20, 2023, Dr. Vang told plaintiff he would put him up for pain management if plaintiff stopped using illicit drugs and returned clean drug tests. Plaintiff never received pain management because he was transferred to CSP-LAC on September 12, 2023.

Within a few days of arriving at CSP-LAC, plaintiff went to see defendant Dr. Kehinde. (ECF No. 30 at 21.) Plaintiff told Dr. Kehinde that he was being referred for pain management at MCSP. Defendant Dr. Kehinde replied, "This is Lancaster." Defendant also did not renew plaintiff's prescription for the neuropathic pain medication called Gabapetin. (Id. at 22.) Plaintiff submitted seven healthcare requests (7362s) to Dr. Kehinde, but he has refused to address plaintiff's pain. Plaintiff is prescribed Lidocaine ointment and patches, but they do nothing for his hip socket pain. (Id.)

Defendant Dr. Oh was plaintiff's primary care provider from November 19, 2023, to about December 31, 2023. (ECF No. 30 at 23.) Plaintiff submitted at least six 7362s complaining of severe pain but she refused and failed to provide plaintiff with meaningful pain management to his known medical needs. (Id.) Plaintiff also alleges that defendant Lundy, the

4

CSP-LAC Warden, failed her duty to ensure that the medical staff do not subject inmates to cruel and unusual punishment.

Plaintiff alleges he is being prepped for hip surgery but the surgery has been cancelled twice with no explanation. (ECF No. 30 at 24.) The accommodations for his disabilities are now being met but the issue of severe pain has not been addressed. (Id.) Plaintiff is contemplating suicide and the pain from bone-on-bone contact keeps him up at night. (Id.)

## DISCUSSION

### I.   Claim I: Title II of the ADA (42 U.S.C. § 12131 et seq.)

Plaintiff alleges he was denied equal and safe access to the ASU yard in violation of Title II of the ADA. As a result, he suffered injuries from a fall while traversing the "A" section shower path that the defendants used to circumvent the hole in the pathway to the ASU yard.

### A. Legal Standard

Title II of the ADA provides that individuals with disabilities cannot be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity," nor may they be "subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Title II emphasizes 'program access,' meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons." Cohen v. City of Culver City, 754 F.3d 690, 694-95 (9th Cir. 2014); see also 28 C.F.R. § 35.150(a). Title II's protections extend to incarcerated persons with disabilities in state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996).

To state a claim for violation of Title II of the ADA, a plaintiff must allege four elements:

> (1) [H]e is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

O'Guinn v. Lovelock Corr. Ctr., 502 F.3d 1056, 1060 (9th Cir. 2007). As to the third element, "[a]n individual is excluded from participation in or denied the benefits of a public program if a

public entity's facilities are inaccessible to or unusable by individuals with disabilities." Daubert v. Lindsay Unified Sch. Dist., 760 F.3d 982, 985 (9th Cir. 2014) (citing 28 C.F.R. § 35.149). Public entities must also "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." Pierce v. Cnty. of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008) (citing 28 C.F.R. § 35.130(b)(7) and McGary v. City of Portland, 386 F.3d 1259, 1265–67 (9th Cir. 2004)).

In addition, "[t]o recover monetary damages under Title II of the ADA ... a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The appropriate test for intentional discrimination under Title II is deliberate indifference. Id. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." Id. at 1138-39 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)).

**B. Analysis**

The court first determines which named defendants are "public entities" for purposes of Title II of the ADA. Defendant CDCR is a state governmental entity properly subject to suit, 42 U.S.C. § 12131(1)(B), and vicariously liable for the acts of its employees. Duvall, 260 F.3d at 1141. All seven individual defendants sued in their official capacities are considered public entities under Title II. See Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187–88 (9th Cir. 2003). However, plaintiff may not maintain his Title II claim against any defendants in their individual capacities. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002). Finally, John Doe #2, the maintenance worker allegedly responsible for fixing the pipe, should be dismissed with leave to amend because the TAC contains only brief, conclusory facts linking him to the alleged disability discrimination. See Iqbal, 556 U.S. at 678; Zepeda v. Sullivan, No. 1:06-cv-1391 AWI GSA PC, 2009 WL 1288235, at *3 (E.D. Cal. May 7, 2009) ("Whether a defendant is named or has been designated as a 'John Doe,' Plaintiff must tie that defendant's actions to the specific harms alleged to have been caused to Plaintiff.").

Turning to the merits, for screening purposes, plaintiff has stated a cognizable Title II claim. First, plaintiff's degenerative bone disease and resulting mobility limitations fall within the Act's meaning of disability. Second, as a state prisoner, plaintiff was qualified to access the ASU yard and participate in activities there. See Yeskey, 524 U.S. at 210. Regarding the last two elements, plaintiff has adequately alleged that the ASU yard was neither readily accessible to nor usable by incarcerated persons with disabilities. The hole in the pathway prevented plaintiff's safe passage to the yard, and the "A" section shower used by defendants to circumvent the dangerous pathway had its own inaccessible barriers that caused plaintiff's fall. Cf. Pierce, 526 F.3d at 1221 (noting the ADA contemplates "reassignment of services to *accessible* buildings as a permissible means of accommodation" (citing 28 C.F.R. § 35.150(b)(1)) (emphasis added)).

The undersigned also finds that the TAC contains sufficient facts to establish defendants' deliberate indifference. Plaintiff alleges that the hole was present for months. He filed several grievances about the hole and personally alerted defendants Corcoran, Mendoza, Pedersen, and Bannion to its danger. Still, the hole was not fixed until two weeks after his fall. Further, because the TAC identifies defendants Mendoza and Pedersen as ADA staff, it is reasonable to infer they possessed subject matter expertise and had specific knowledge that an ADA violation was likely.

Accordingly, for screening purposes, plaintiff has adequately alleged a Title II claim against defendant CDCR and defendants Covello, Bannion, John Doe #1, Mendoza, Pedersen, and Corcoran in their official capacities only.[1]

/////

/////

---

[1] Because the TAC names CDCR as a defendant, the individual defendants sued in their official capacities are potentially redundant. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (when a plaintiff sues state officials for monetary damages in their official capacities, it "is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself"). However, the undersigned declines to dismiss the defendants at this early stage of the case and without the benefit of briefing from the parties. See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008) (dismissal of redundant defendants is subject to district court's discretion).

**II.    Claim II: Eighth Amendment Deliberate Indifference to Serious Medical Needs**

   **A.  Legal Standard**

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth Amendment right. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citing Estelle, 429 U.S. at 104). "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F. 3d at 1131-32, citing McGuckin, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." (Id. at 839.) A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106.

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the

doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the plaintiff's health." Hamby v. Hammond, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation and internal quotation marks omitted). A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Moreover, as for any § 1983 claim, there must be an actual causal link between the actions of the named defendants and the alleged constitutional deprivation. See Monell v. Dep't of Soc. Services, 436 U.S. 658, 691–92 (1978); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980).

**B. Analysis**

    **i. Pain Management**

The TAC sufficiently establishes plaintiff's hip pain as an objectively serious medical need. See Jett, 439 F.3d at 1096; Estelle, 429 U.S. at 104. However, for the reasons explained below, the TAC's allegations regarding inadequate pain management amount to a difference of opinion about the proper course of treatment and do not constitute deliberate indifference. See Toguchi, 391 F.3d at 1058.

Plaintiff's assertions of defendants' deliberate indifference to his pain are undermined by the healthcare grievance responses attached to the TAC and referenced therein. The undersigned may consider these documents under the doctrine of incorporation by reference. See Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (when reviewing a motion to dismiss, courts may consider the "allegations contained in the pleadings" and "exhibits attached to the complaint"). On a motion to dismiss, courts need not accept as true allegations that are contradicted by exhibit. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001). While these authorities are in the context of Rule 12(b)(6) motions, they apply with equal force to screenings under 28 U.S.C. § 1915A. See Smith v. Swaney, 399 F. App'x 234 (9th Cir. 2010) (affirming sua sponte dismissal where prison grievance documents attached to complaint undermined plaintiff's § 1983 claim).

9

1	First, defendant Vang's alleged refusal to refer plaintiff to pain management because of his drug use does not constitute medical indifference. See Nunez v. Naseer, No. 2:14-cv-1180 TLN AC P, 2017 WL 416115, at *12 (E.D. Cal. Jan. 30, 2017) (no deliberate indifference where Pain Management Committee discontinued narcotic in part because of plaintiff's history of drug abuse), report and recommendation adopted, No. 2:14-cv-1180 TLN AC P (E.D. Cal. Mar. 30, 2017). The healthcare grievance responses from this period support this conclusion. The MCSP institutional level response to plaintiff's pain-related grievance dated July 19, 2023, states that plaintiff is in the Chronic Care Program where his needs are closely monitored, but that "[o]pioids ae not the preferred treatment for chronic pain." (ECF No. 30 at 34.) The headquarters level response shows that plaintiff was referred for an orthopedic surgery consult on September 1, 2023, prior to his transfer to CSP-LAC on September 12, 2023, which further undermines a showing that Dr. Vang was deliberately indifferent to his medical needs.

The grievance documents also refute the allegation that defendants Dr. Kehinde and Dr. Oh were deliberately indifferent to his pain, specifically as to his requests to renew his Gabapetin prescription after he arrived at CSP-LAC. An enclosed headquarters level response dated April 29, 2024, informs plaintiff that his primary care team is aware of his requests for Gabapentin but "have determined that the benefits outweigh the risk of fatal side effects when taking opioids and/or gabapentin while on Suboxone." (ECF No. 30 at 45.) At the time, plaintiff was on Suboxone 20 mg. (Id.)

In sum, the healthcare grievance documents establish that defendants attempted to treat plaintiff's pain, but that he disagreed with their medical decisions and course of treatment. "[P]laintiff's preference for stronger medication … represents precisely the type of difference in medical opinion between a lay prisoner and medical personnel that is insufficient to establish a constitutional violation." See Parlin v. Sodhi, No. CV 10-6120 VBF MRW, 2012 WL 5411710 at *5 (C.D. Cal. Aug. 8, 2012) report and recommendation adopted, No. CV 10-6120 VBF MRW, 2012 WL 5409833 (C.D. Cal. Nov. 5, 2012). Accordingly, plaintiff's TAC does not state a plausible Eighth Amendment medical indifference claim against defendants Vang, Kehinde, or Oh.

### ii. Defendant Lundy's Supervisory Liability

Plaintiff also sues defendant Lundy, the CSP-LAC Warden, for failing to ensure that her "medical staff does not subject inmates to cruel [and] unusual punishment." (ECF No. 23.) Plaintiff's TAC is inconsistent as to whether defendant Lundy is sued in her official or individual capacities. (Compare ECF No. 30 at 2 (Lundy sued in her individual and official capacities), with id. at 6 (official capacity only)). Regardless, plaintiff's Eighth Amendment claim against Lundy fails under either theory.

First, as a state official named in a complaint seeking only damages, defendant Lundy is immune from official capacity suit under the Eleventh Amendment. See Arizonans for Official English v. Arizona, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983.") Second, a supervisor can be held liable in her individual capacity under § 1983 only if (1) the supervisor personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 645-46 (9th Cir. 1989)). Here, plaintiff's claim is based solely on Lundy's respondeat superior liability. The TAC contains no facts alleging Lundy's personal participation in any aspect of plaintiff's medical care.

Accordingly, plaintiff's TAC does not state an Eighth Amendment deliberate indifference to serious medical needs claim against defendant Lundy in her official or individual capacities.

### III. Options From Which to Choose

After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that plaintiff has adequately stated a valid claim for relief pursuant to Title II of the ADA against defendant CDCR and defendants Covello, Bannion, John Doe #1, Mendoza, Pedersen, and Corcoran in their official capacities only. However, the allegations in the complaint are not sufficient to state a cognizable Eighth Amendment deliberate indifference to serious medical need against any defendants. It appears to the court that plaintiff may be able to allege facts to fix these problems. Therefore, plaintiff has the option of filing an amended complaint.

Therefore, based on the court's screening, plaintiff has a choice to make. After selecting

an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**Option 1:** The first option available to plaintiff is to proceed immediately against defendant CDCR and defendants Covello, Bannion, John Doe #1, Mendoza, Pedersen, and Corcoran in their official capacities only on the ADA Title II claim.  By choosing this option, plaintiff will be agreeing to voluntarily dismiss defendants John Doe #2, Vang, Kehinde, Oh, and Lundy.  The court will proceed to immediately serve the complaint and order a response from defendants.  However, plaintiff is advised that the court cannot order service of John Doe #1 until plaintiff identifies him through discovery and files a motion to amend the complaint to include his real name.  See Mosier v. Cal. Dep't of Corr. & Rehab., 1:11–cv–1034 MJS, 2012 WL 2577524, at *3 (E.D. Cal. July 2, 2012).

**Option 2:** The second option available to plaintiff is to file an amended complaint to fix the problems described above regarding plaintiff's Eighth Amendment claim against defendants Vang, Kehinde, Oh, and Lundy.  If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights.  Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).  Also, the complaint must specifically identify how each named defendant is involved.  Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981).  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient."  Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court will not refer to a prior pleading in order to make his amended complaint complete.  See Local Rule 220.  This is because, as a general rule, an amended complaint replaces the prior complaint.  Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir.

2012). Therefore, in an amended complaint, every claim and every defendant must be included.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to amend (ECF No. 29) is GRANTED.

2. Plaintiff's claims against defendants John Doe #2, Vang, Kehinde, Oh, and Lundy do not state claims for which relief can be granted. See 28 U.S.C. § 1915A(b)(1).

3. Plaintiff has the option to proceed immediately on his ADA Title II claim against defendant CDCR and defendants Covello, Bannion, John Doe #1, Mendoza, Pedersen, and Corcoran in their official capacities only, or to file an amended complaint.

4. Within 21 days from the date of this order, plaintiff shall complete and return the attached Notice of Election form notifying the court whether he wants to proceed on the screened complaint or whether he wants to file an amended complaint.

5. If plaintiff does not return the form, the court will assume that he is choosing to proceed on the complaint as screened and will recommend dismissal without prejudice of defendants John Doe #2, Vang, Kehinde, Oh, and Lundy.

DATED: July 21, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

13

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN K. KAWAMOTO,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>PATRICK COVELLO, et al.,<br><br>　　　　Defendants. | No.  2:24-cv-00258 SCR P<br><br><br>NOTICE OF ELECTION |

　　　　Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his ADA Title II claim against defendant CDCR and defendants Covello, Bannion, John Doe #1, Mendoza, Pedersen, and Corcoran in their official capacities only without amending the complaint.  Plaintiff understands that by choosing this option, defendants John Doe #2, Vang, Kehinde, Oh, and Lundy will be voluntarily dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a).

\_\_\_\_\_ Plaintiff wants time to file an amended complaint.


DATED:_____

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　Darren K. Kawamoto
　　　　　　　　　　　　　　　　　　　　　　Plaintiff pro se

1